# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## GRIFFIN v TRUMBULL INSURANCE COMPANY

Docket No. 162419. Argued on application for leave to appeal January 12, 2022. Decided July 15, 2022.

Willie Griffin brought an action in the Wayne Circuit Court against Trumbull Insurance Company, the Michigan Assigned Claims Plan (the MACP), Allstate Insurance Company, Esurance Property and Casualty Insurance Company, and an unnamed John Doe insurance company, seeking personal protection insurance (PIP) benefits for injuries plaintiff sustained while riding a motorcycle. In May 2016, Griffin was driving a motorcycle when a large truck merged into his lane. Griffin swerved to avoid the truck. While there was no physical collision, Griffin's motorcycle went down, it was damaged, and he was badly injured. The responding police officer recorded the truck driver's name, personal telephone number, and residential address in the crash report; however, the officer did not record the license plate number or VIN of the truck, the insurer of the truck, the owner of the truck, or any other identifying information regarding the truck. Five days after the accident, Griffin's attorney sent a letter to the truck driver using the address in the crash report. The letter informed the driver that Griffin intended to take legal action; the truck driver never responded to the letter. Trumbull was Griffin's personal automobile insurer at the time of the accident, and Griffin filed a PIP benefits claim with Trumbull in June 2016. Trumbull made numerous unsuccessful attempts to contact the truck driver before closing its investigation in late December 2016; it was unclear whether Trumbull ever shared the details of its investigation with Griffin. In December 2016, Griffin submitted a separate PIP benefits claim to the MACP through the Michigan Automobile Insurance Placement Facility (the MAIPF). The MAIPF refused to assign the claim and requested more information. Griffin also submitted claims to Esurance and Allstate, which were both lower-priority insurers. In April 2017, approximately 11 months after the accident, Griffin filed this lawsuit seeking payment of his PIP benefits. During discovery, the parties learned that the truck had been owned by Pavex Corporation and insured by Harleysville Insurance. The parties also learned that Pavex never reported the accident or submitted a claim to Harleysville. Trumbull moved for summary disposition, arguing that it was not liable to pay PIP benefits because Harleysville was the highest-priority insurer. The MACP also moved for summary disposition. Allstate, Esurance, and the John Doe insurance company were previously dismissed by stipulation, and those orders were not appealed. The trial court, Susan L. Hubbard, J., granted summary disposition in favor of Trumbull and the MACP, holding that Harleysville was the highest-priority insurer and that Griffin had not exercised reasonable diligence in attempting to timely locate Harleysville. The Court of Appeals, K. F. KELLY and

TUKEL, JJ. (RONAYNE KRAUSE, P.J., concurring in part and dissenting in part), affirmed but for different reasons than those relied on by the trial court. 334 Mich App 1 (2020). The Court of Appeals majority relied on *Frierson v West American Ins Co*, 261 Mich App 732 (2004), holding that *Frierson* called for a binary analysis that asks only whether a higher-priority insurer is identifiable. The majority rejected the reasonable-diligence standard that the trial court had used and held that that because Harleysville could have been, and in fact eventually was, identified, Trumbull was entitled to summary disposition. The Court of Appeals unanimously affirmed the grant of summary disposition to the MACP. Griffin sought leave to appeal the Court of Appeals judgment to the extent it affirmed the grant of summary disposition for Trumbull, and the Supreme Court ordered and heard oral argument on the application. 507 Mich 941 (2021).

In an opinion by Justice WELCH, joined by Chief Justice MCCORMACK and Justices BERNSTEIN and CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

MCL 500.3114(5) of the no-fault act, MCL 500.3101 *et seq*., provides, in pertinent part, that a person who suffers accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim PIP benefits from insurers in a certain order of priority. MCL 500.3114 puts the onus on a claimant to "claim" PIP benefits from the specified list of potential insurers; to "claim" PIP benefits in this context means that one must put potential insurers on notice and submit insurance claims stating an entitlement to benefits and requesting payment. Accordingly, a claimant must be diligent in the pursuit of their claim for PIP benefits. Whether a claimant exercised due diligence is a fact-specific determination that must be made on a case-by-case basis. Furthermore, insurers who receive a claim for PIP benefits before expiration of the limitations period must act diligently when investigating, responding to, and resolving the claim. The statutory scheme adopted by the Legislature strongly incentivizes insurers to pay first and seek reimbursement later when it is clear that a claimant will be entitled to PIP benefits from someone, and it penalizes unreasonable payment delays. Nonetheless, an insurer that is confident that it is not liable to pay PIP benefits can and should promptly deny the claim so that the claimant can seek assignment by the MAIPF or take other actions that might be necessary to preserve their right to PIP benefits. Importantly, claiming benefits from the highest-priority insurer that is identifiable through the filing of an insurance claim is not the same as filing an "action for recovery of" PIP benefits under MCL 500.3145(1). *Frierson* provided no clear guidance about what it means for a higher-priority insurer to be unidentifiable because that case involved a hit-and-run collision and the parties in *Frierson* stipulated that no higher-priority insurer was identifiable; accordingly, *Frierson* did not create a binary inquiry that only asks whether an insurer was potentially identifiable in the abstract. In this case, it was undisputed that the limitations period in MCL 500.3145(1) had run before Harleysville was identified and that Harleysville was the highest-priority insurer under MCL 500.3114(5). Griffin exercised due diligence under the circumstances by hiring an attorney, investigating the claim, and submitting a claim for PIP benefits to Trumbull, the highest-priority insurer known to and identifiable by any relevant party based on the available information. Because Harleysville was unidentifiable during the prelitigation phase, Trumbull was the default insurer. Trumbull, however, did not make payment or timely respond to inquiries from Griffin's attorney. Additionally, Trumbull did not formally deny Griffin's claim until after this lawsuit had been filed and after the limitations period to put an additional insurer on notice or to file a lawsuit against another insurer had passed. With Trumbull refusing to pay or deny the pending claim for PIP benefits, and being unable to identify any higher-priority insurer, Griffin was left waiting in

limbo for Trumbull to make a decision on his pending PIP benefits claim. Due diligence did not require Griffin to file a lawsuit to obtain subpoena power *before Trumbull had taken any formal action to deny or dispute liability for Griffin's pending PIP benefits claim*; accepting such an argument would incentivize insurers to engage in undesirable gamesmanship and would be antithetical to the core purposes of the no-fault act concerning the prompt resolution of claims and the avoidance of needless litigation. Under the circumstances of this case, there was no reason for Griffin to file a lawsuit against Trumbull sooner than he did, which was still within the limitations period. In the absence of an express requirement in the no-fault act, someone who is injured in an accident should not be required to file a lawsuit against a known insurance company merely to ensure that he or she can force cooperation of potentially knowledgeable individuals through the power of subpoena. Accordingly, Trumbull could be held liable to pay Griffin's PIP benefits claim under MCL 500.3114(5). The trial court erred by granting Trumbull's summary-disposition motion, and the Court of Appeals erred by affirming on the basis that a previously *unidentifiable* higher-priority insurer *became identifiable* during litigation well after the one-year notice and limitations period in MCL 500.3145 had expired.

Court of Appeals judgment reversed to the extent that summary disposition was granted in favor of Trumbull; case remanded to the Wayne Circuit Court for further proceedings.

Justice ZAHRA, joined by Justice VIVIANO, dissenting, would have affirmed the decision of the Court of Appeals because under the unambiguous text of the no-fault act, a lower-priority insurer cannot be held liable for PIP benefits when the highest-priority insurer is identifiable and not given timely notice under MCL 500.3145(1). The general purpose of an act cannot defeat the clear and unambiguous language within the act that places limitations on the scope of that act. In this case, plaintiff failed to timely claim PIP benefits from the insurer of the owner or registrant of the truck involved in his accident—Harleysville. It was undisputed that Harleysville was the highest-priority insurer, and therefore plaintiff was required to claim benefits from Harleysville within the one-year statutory period. Because plaintiff failed to do so, plaintiff was barred from collecting PIP benefits from Harleysville. Nothing in the no-fault act provides a basis to conclude that plaintiff was nevertheless entitled to recover based on notice it gave to Trumbull, the wrong insurer. The no-fault act does not provide exceptions for difficulties in discovering necessary facts or evidence that would either toll the statute of limitations or allow the plaintiff to sue an otherwise incorrect defendant. Similarly, nothing in the broader statutory context suggests that the Legislature intended to place lower-priority insurers on the hook when a plaintiff fails to identify the highest-priority insurer within the limitations period. *Frierson* did not hold that an injured party can jump down the order of priority if the highest-priority insurer *could* have been identified but was not; *Frierson* explained that the offending vehicle's insurer would be liable under MCL 500.3114(5) if identified. Accordingly, the Court of Appeals correctly explained that *Frierson* calls for a binary analysis: a higher-priority insurer is either identifiable or not. Furthermore, there was no textual basis for the reasonable-diligence standard; under a proper reading of the statute, whether a higher-priority insurer is identifiable does not depend on whether a plaintiff exercised reasonable diligence to identify that insurer. Even if there were a reasonable-diligence standard, plaintiff did not exercise reasonable diligence in this case. Had plaintiff timely initiated legal action, as threatened in the correspondence to the driver of the truck, plaintiff would have discovered the existence of Harleysville before the expiration of the limitations period. Plaintiff also never investigated whether the driver of the truck had been operating his employer's vehicle at the time of the accident, despite seeing that the truck was a stake-bed truck with logos on it.

Justice CLEMENT, dissenting, would have held that the trial court properly identified the reasons for granting summary disposition to defendants-appellees and that the trial court properly held that plaintiff failed to exercise reasonable diligence in identifying the highest-priority insurer. Justice CLEMENT did not agree that the proper analysis was as simple as the binary analysis that asks only whether a higher-priority insurer is identifiable. Rather, the structure of the no-fault system makes it clear that it is intended to be comprehensive, and it is notable that all the instances of individuals who are excluded from benefits in MCL 500.3113 involve people who had control, in one way or another, over being excluded from benefits. In light of the textual indications of the system's intended comprehensiveness, Justice CLEMENT would interpret the statute as requiring a claimant to show at least, but also no more than, reasonable diligence when it requires an injured person to "claim." The trial court did not clearly err by concluding that plaintiff had not demonstrated reasonable diligence in trying to identify the insurer of the truck. Plaintiff knew that he had been in an accident that involved a motor vehicle and thus that the insurer of that vehicle would be at the top of the order of priority. Plaintiff further knew the identity of the operator of the motor vehicle. Yet plaintiff waited until roughly two weeks remained in the limitations period before filing suit against several potentially implicated insurers known to him. It was not reasonable to conclude that two weeks was enough time to realistically expect to use legal process to obtain the necessary information to identify the motor vehicle's insurer from the operator of the vehicle that caused plaintiff to swerve and crash. Furthermore, Trumbull's conduct was irrelevant; plaintiff had the burden to file a proper claim under MCL 500.3114(5).

**Michigan Supreme Court**
**Lansing, Michigan**

# OPINION

Chief Justice:
   Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED  July 15, 2022

STATE OF MICHIGAN

SUPREME COURT

WILLIE GRIFFIN,

       Plaintiff-Appellant,

v                                       No. 162419

TRUMBULL INSURANCE COMPANY
and MICHIGAN ASSIGNED CLAIMS
PLAN,

       Defendants-Appellees,

and

ALLSTATE INSURANCE COMPANY,
ESURANCE PROPERTY & CASUALTY
INSURANCE COMPANY, and JOHN DOE
INSURANCE COMPANY,

       Defendants.

BEFORE THE ENTIRE BENCH

WELCH, J.

This case involves a claim for personal protection insurance (PIP) benefits filed by plaintiff, Willie Griffin, that was left pending without payment or denial for nearly a year after Griffin was seriously injured while riding a motorcycle. Griffin filed a claim with defendant Trumbull Insurance Company (Trumbull), his primary automobile insurance company, within eight weeks of the accident when he was unable to identify the insurance company for the truck that caused his accident or for its driver. Trumbull neither paid the claim nor denied the claim. One month shy of the 12-month limitations period, Griffin filed a lawsuit against Trumbull, demanding payment pursuant to the insurance policy. Trumbull used its subpoena power obtained in that lawsuit and determined the identity of the truck driver's former employer and the former employer's insurer. Trumbull then, after the one-year notice and limitations period had expired, moved for summary disposition, claiming it had no liability because it was not the highest-priority insurer. The trial court granted Trumbull's motion for summary disposition, effectively eliminating Griffin's ability to obtain PIP benefits from any insurance company, and the Court of Appeals affirmed.

We reverse, in part, and hold that Griffin properly filed a claim under the no-fault act, MCL 500.3101 *et seq.*, against all insurers who were identifiable prior to the expiration of the limitations period and that Trumbull's delaying a decision on payment or denial of Griffin's claim until after the limitations period expired did not excuse it from liability to pay PIP benefits. The trial court erred by granting Trumbull's summary-disposition motion, and the Court of Appeals erred by affirming on the basis that a previously *unidentifiable* higher-priority insurer *became identifiable* during litigation well after the one-year notice and limitations period in MCL 500.3145 had expired.

2

## I. FACTUAL BACKGROUND

On May 6, 2016, Griffin was driving a motorcycle when a large truck merged into his lane. Griffin swerved to avoid the truck. While there was no physical collision, Griffin's motorcycle went down, it was damaged, and he was badly injured. Griffin was transported by ambulance from the scene to a hospital to receive medical treatment.

The truck driver stopped and talked to the responding police officer. The officer recorded the driver's name, personal telephone number, and residential address in the crash report as well as the name and contact information of a second witness. Griffin's insurance and vehicle information were also included in the crash report. However, the responding officer did not record the license plate number or VIN of the truck, the insurer of the truck, the owner of the truck, or any other identifying information regarding the truck.

Griffin hired an attorney to assist with his insurance claim a few days later. Five days after the accident, Griffin's attorney sent a letter to the truck driver using the address in the crash report. The letter stated that Griffin had retained an attorney, provided contact information, and stated that Griffin intended to take legal action. The letter further "suggested that you [the driver] turn this letter over to either the insurance agent or the insurance company handling your liability insurance coverage. We are confident that they will communicate with us relative to this case." The truck driver never responded to the letter.

Trumbull was Griffin's personal automobile insurer at the time of the accident, and the policy included PIP coverage. An Allstate Insurance Company (Allstate) policy held by Griffin's girlfriend covered the motorcycle that Griffin was driving, but that policy did not include PIP coverage. Griffin filed a PIP claim with Trumbull through his attorney on

3

June 30, 2016. Trumbull's initial response was that it needed to investigate, and in late October 2016, its investigator interviewed Griffin at his attorney's office. Beginning on November 1, 2016, Trumbull made numerous unsuccessful attempts to contact the truck driver, which included several phone calls, sending someone to his home, mailing letters, and checking to see if the driver owned any vehicles or businesses. Trumbull also unsuccessfully attempted to contact the other witness listed in the crash report. None of this revealed who owned or insured the truck.

On December 26, 2016, Griffin's attorney wrote to Trumbull again, inquiring whether it intended to pay Griffin's PIP benefits claim, asking for an update as to the results of Trumbull's investigation, and requesting an immediate response. Griffin represented that Trumbull did not respond. The record indicates that Trumbull gave up and closed its investigation in late December 2016. It is unclear when, if ever, Trumbull shared the details of its investigation with Griffin prior to litigation.

Then, on December 30, 2016, after Trumbull still had not paid or denied the PIP benefits claim, Griffin submitted a separate PIP benefits claim to the Michigan Assigned Claims Plan (the MACP) through the Michigan Automobile Insurance Placement Facility (the MAIPF). The MAIPF refused to assign the claim and requested more information. Griffin also submitted claims to Esurance Property and Casualty Insurance Company (Esurance) and Allstate, which were both lower-priority insurers. Then, in April 2017, Griffin's attorney hired MEA Research Services in a final attempt to locate any additional insurance coverage that might be applicable; MEA found no insurance policies for the truck driver, and without any identifying information about the truck, it was unable to provide any further assistance. On April 21, 2017, approximately 11 months after the accident,

4

Griffin timely filed this lawsuit seeking payment of his PIP benefits and naming Trumbull, the MACP, Allstate, Esurance, and an unnamed John Doe insurance company as defendants.[1] It was not until May 10, 2017—more than a year after both the accident and the filing of the PIP claim with Trumbull—that Trumbull finally informed Griffin that it was "unable to consider benefits at this time due to a lack of information regarding this matter."

During discovery in this case, Trumbull hired an investigator to find the truck driver and serve him with a deposition subpoena. The parties learned from the truck driver's deposition that he had never contacted his insurer and did not own the truck he had been driving. Rather, the truck was owned by Pavex Corporation (Pavex), the driver's former employer, and the truck had been insured by Harleysville Insurance (Harleysville). It was also discovered that the truck driver had submitted an accident report to Pavex but that Pavex never reported the accident or submitted a claim to Harleysville, and the driver never forwarded Griffin's letter to Pavex. Trumbull eventually obtained a copy of the vehicle registration for the truck and a copy of the Harleysville insurance policy from Pavex.

Armed with new information, Trumbull moved for summary disposition under MCR 2.116(C)(10), arguing that it was not liable to pay PIP benefits because Harleysville was the highest-priority insurer. Trumbull argued that it did not matter that Griffin would not recover any PIP benefits because the limitations period had run before Harleysville was discovered. The MACP likewise moved for summary disposition, making similar arguments. The trial court agreed with the moving parties, holding that Harleysville was

---

[1] Allstate, Esurance, and the John Doe insurance company were previously dismissed by stipulation, and those orders have not been appealed.

the highest-priority insurer and that Griffin had not exercised reasonable diligence in attempting to timely locate Harleysville. The court therefore granted summary disposition in favor of Trumbull and the MACP.

The Court of Appeals affirmed the trial court in a split, published decision. *Griffin v Trumbull Ins Co*, 334 Mich App 1; 964 NW2d 63 (2020). The majority relied on *Frierson v West American Ins Co*, 261 Mich App 732; 683 NW2d 695 (2004),[2] a case that involved a hit-and-run collision in which the offending vehicle and driver were never located. In *Frierson*, the Court of Appeals held that the plaintiff was entitled to PIP benefits from the passenger's motor vehicle insurer because the offending vehicle was never located. *Id*. at 737-738. In this matter, the Court of Appeals construed *Frierson* narrowly and found that its holding only applies if a higher-priority insurer under MCL 500.3114 *cannot be identified* and that the higher-priority insurer in *Frierson* could not be identified because of the hit-and-run nature of the crash. *Griffin*, 334 Mich App at 11. The majority concluded that *Frierson* "calls for a binary analysis that asks only whether a higher-priority insurer is identifiable." *Id*. at 11-12. The majority rejected the reasonable-diligence standard used by the trial court and held that it was dispositive "that Harleysville could have been, and in fact actually was, identified," *id*. at 12, regardless of the efforts or difficulties associated with attempting to locate insurers because of incomplete information. Accordingly, the Court of Appeals affirmed for different reasons than those relied on by the trial court.[3]

---

[2] No party sought leave to appeal the Court of Appeals' decision in *Frierson*.

[3] The Court of Appeals unanimously affirmed the grant of summary disposition to the MACP, and that holding was not appealed to this Court.

6

Judge RONAYNE KRAUSE concurred as to disposition of the claims against the MACP but dissented as to Trumbull. The dissent agreed that *Frierson* established a "conditional test: *if* a higher-priority insurer 'cannot be identified,' *then* the 'general rule' regarding insurer priority applies." *Griffin*, 334 Mich App at 18 (RONAYNE KRAUSE, J., concurring in part and dissenting in part). However, the dissent found no guidance in *Frierson* for what it means for an insurer to be "identifiable" because the parties in that case had simply agreed—and the Court accepted—that no higher-priority insurer could have been identified. *Id*. The dissent rejected the "absolute impossibility" standard that the majority had seemingly crafted "out of whole cloth." *Id*. at 20. While recognizing that neither the Legislature nor this Court had yet crafted a "standard for determining when or how a higher-priority insurer 'cannot be identified,'" the dissenting judge expressed support for something resembling a due-diligence standard. *Id*. at 20-21. Under such a standard, the dissenting judge would have held that Griffin was sufficiently diligent under the circumstances and that Griffin should therefore be entitled to the PIP benefits. *Id*. at 22-23.

Griffin sought leave to appeal to this Court. We scheduled oral argument on the application and directed the parties to address the following issues:

> (1) whether a lower-priority insurer, who was provided timely notice under MCL 500.3145(1), can be held liable for personal protection insurance benefits under the no-fault act if the higher-priority insurer was not identified until after the one-year statutory notice period under MCL 500.3145(1) expired; if so, (2) whether the insured must prove that he or she exercised reasonable, due, or some other degree of, diligence in searching for the higher-priority insurer; and, if so, (3) whether the appellant exercised the requisite degree of diligence in searching for the higher-priority insurer. [*Griffin v Trumbull Ins Co*, 507 Mich 941, 941-942 (2021).]

7

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

## III. ANALYSIS

As a comprehensive and "innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or 'fault') liability system[,] [t]he goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). When reaffirming an insurer's right to equitable subrogation last term, we observed that

> [t]he no-fault act is "a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents." For that reason, "whenever a priority question arises between two insurers, the preferred method of resolution is for one of the insurers to pay the claim and sue the other in an action of [equitable] subrogation." [*Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 517; 968 NW2d 482 (2021) (alterations in original; citations omitted).]

Moreover, while we have long recognized that when a statute is "clear and unambiguous, the courts must apply the statute as written," we have also acknowledged that "[t]he no-fault act is remedial in nature and is to be liberally construed in favor of the persons who are intended to benefit from it." *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 631; 563 NW2d 683 (1997). See also *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 61; 404 NW2d 199 (1987); *Walega v Walega*, 312 Mich App 259, 266; 877 NW2d 910 (2015); *Churchman v Rickerson*, 240 Mich App 223, 228; 611 NW2d 333 (2000).

Following a motor vehicle accident, MCL 500.3114[4] instructs a person to pursue his or her "claim" for PIP benefits from insurers according to the listed order of priority. In this context, a claim for benefits is simply a demand to an insurer by its insured or a third party for payments that are believed to be due after a motor vehicle accident.[5] "[T]he general rule is that one looks to a person's own insurer for no-fault benefits unless one of the statutory exceptions, [MCL 500.3114(2), (3), and (5)], applies." *Parks v Detroit Auto Inter-Ins Exch*, 426 Mich 191, 202-203; 393 NW2d 833 (1986). For a claim involving a motorcycle, the order of priority for potential insurers is set forth in MCL 500.3114(1) and (5):

(1) *Except as provided in subsections* (2), (3), *and (5)*, a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a

---

[4] After the accident giving rise to Griffin's claim occurred, MCL 500.3114 and other parts of the no-fault act were amended by 2016 PA 347 and 2019 PA 21. The amended provisions are not before the Court. Unless otherwise stated, this opinion will refer to the no-fault act as it existed on May 6, 2016, the date of the accident.

[5] The point is that making a claim for insurance benefits is not the same as filing a lawsuit. This commonsense, contextual understanding is also consistent with how an insurance claim is understood within the insurance industry. See, e.g., National Association of Insurance Commissioners, *Glossary of Insurance Terms* <https://content.naic.org/consumer_glossary#C> (accessed June 8, 2022) [https://perma.cc/CU8Y-Z8GQ] (defining "claim" as "a request made by the insured for insurer remittance of payment due to loss incurred and covered under the policy agreement"); GEICO, *Glossary of Insurance Terms and Definitions* <https://www.geico.com/information/insurance-terms/> (accessed June 8, 2022) [https://perma.cc/WF8L-JKP9] (defining "claim" as "[a]ny request or demand for payment under the terms of the insurance policy"); International Risk Management Institute, Inc., *Glossary* <https://www.irmi.com/term/insurance-definitions/claim> (accessed June 8, 2022) [https://perma.cc/H8N5-ZTAZ] ("Claim — used in reference to insurance, a claim may be a demand by an individual or corporation to recover, under a policy of insurance, for loss that may come within that policy.").

motor vehicle accident.  *A personal injury insurance policy described in section 3103(2) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motorcycle accident. . . .*

\* \* \*

(5) Subject to subsections (6) and (7), a person who suffers accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle *shall claim personal protection insurance benefits from insurers in the following order of priority*:

(a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

(b) The insurer of the operator of the motor vehicle involved in the accident.

(c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.

(d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.  [Emphasis added.]

At the time of the accident, the limitations period for providing notice and filing an action for recovery of PIP benefits was contained in MCL 500.3145(1):

An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury.  If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred.  However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.  The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf.  The notice shall give the name and address of the

10

claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

It is clear that MCL 500.3114 puts the onus on a claimant to "claim" PIP benefits from a specified list of potential insurers based on the statutory priority scheme. As previously noted, to "claim" PIP benefits in this context can be reasonably understood to mean that one must put potential insurers on notice and submit insurance claims stating an entitlement to benefits and requesting payment.[6] Taken together, this implies that a claimant must be diligent in the pursuit of his or her claim for PIP benefits. Due diligence requires a good-faith effort to fulfill a legal obligation or requirement that could ordinarily be expected of a person under the factual circumstances. See *People v Bean*, 457 Mich 677, 682-683; 580 NW2d 390 (1998); *People v Dye*, 431 Mich 58, 66-67; 427 NW2d 501 (1988). See also *In re Gorcyca*, 500 Mich 588, 627; 902 NW2d 828 (2017) (holding that due diligence is " '[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation' "), quoting *Black's Law Dictionary* (10th ed). While due diligence must be more than a mere gesture, it does not mean that one must exhaust everything that is theoretically or abstractly possible. See *Ickes v Korte*, 331 Mich App 436, 443; 951 NW2d 699 (2020) ("[D]ue diligence means undertaking reasonable, good-faith measures under the circumstances, not necessarily undertaking everything possible."). Due diligence does not require an individual to do the impossible, nor does it require one to commit illegal, unethical, or

---

[6] The obligation to "claim personal protection insurance benefits from insurers" in a stated order of priority under MCL 500.3114(5) is separate and distinct from the requirement that an "action for recovery of" PIP benefits (i.e., a lawsuit) be filed within a specified time frame under MCL 500.3145(1).

otherwise impermissible acts. See *id*. at 443 n 3. Requiring a claimant to identify potential insurers and pursue a PIP benefits claim with due diligence is consistent with the purpose of the no-fault act and its limitations period. We emphasize, however, that this will be a fact-specific determination that must be made on a case-by-case basis.

The Legislature also provided strong incentives for prompt resolution of claims and avoidance of needless litigation when it provided that an attorney's "fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). PIP benefits "are payable as loss accrues," MCL 500.3142(1), and they are "overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained," MCL 500.3142(2). Overdue payments are subject to a 12% interest penalty. MCL 500.3142(3). MCL 500.3142(2) also provides that "[i]f reasonable proof is not supplied as to the entire claim," then those parts of the claim that are not sufficiently supported at first but are "later supported by reasonable proof [are] overdue if not paid within 30 days after the proof is received by the insurer." The law further requires an insurer to pay all benefits to or for the benefit of the injured person or, in death, to his or her dependents. MCL 500.3112. If the insurer has doubt about the party who should receive the payment, it may ask the circuit court for an order apportioning the benefits equitably between the proper parties. *Id*. When read together, these provisions establish that the insurers who receive a claim for PIP benefits prior to expiration of the limitations period must act diligently when investigating, responding to, and resolving the claim, and the provisions provide a strong financial incentive to do so.

12

For decades, the Court of Appeals has recognized that a dispute regarding which of multiple insurers is legally obligated to pay a valid PIP benefits claim generally does not excuse delaying payment. See *Bloemsma v Auto Club Ins Co*, 174 Mich App 692, 697; 436 NW2d 442 (1989) ("A dispute of priority among insurers will not excuse the delay in making timely payment."); *Bach v State Farm Mut Auto Ins Co*, 137 Mich App 128, 132; 357 NW2d 325 (1984) (holding that to delay paying a claim to resolve which of two insurers was legally responsible would defeat the purpose of the statutes imposing penalty interest and attorney fees). We affirm this general rule as being consistent with the overall statutory scheme adopted by the Legislature. When the wrong insurer pays, the Legislature has provided statutory rights for recoupment of payments, see, e.g., MCL 500.3114(6), and we have recognized an insurer's right to sue for equitable subrogation, see *Esurance*, 507 Mich at 517-520. In other circumstances, a priority dispute may result in a claim submitted to the MACP being assigned by the MAIPF. See MCL 500.3172. The statutory scheme adopted by the Legislature thus strongly incentivizes insurers to pay first and seek reimbursement later when it is clear that a claimant will be entitled to PIP benefits from someone, and it penalizes unreasonable payment delays. See *Bazzi v Sentinel Ins Co*, 502 Mich 390, 419, 423; 919 NW2d 20 (2018) (MCCORMACK, J., dissenting). Alternatively, an insurer that is confident that it is not liable to pay PIP benefits can and should promptly deny the claim so that the claimant can seek assignment by the MAIPF or take other actions that might be necessary to preserve the right to PIP benefits.[7]

---

[7] We do not mean to suggest that a lower-priority insurer is statutorily obligated to pay PIP benefits merely because it received a timely claim for such benefits. Rather, such insurers have an obligation to act diligently in deciding how to resolve the claim and to inform the claimant of that decision in a timely manner. Assuming the claimant has been diligent, an

13

## IV. APPLICATION

It is undisputed that the limitations period in MCL 500.3145(1) had run before Harleysville was identified. The parties also agree that Harleysville is the highest-priority insurer under MCL 500.3114(5). The question before the Court is whether the trial court erred by granting summary disposition to Trumbull on the basis that Trumbull could not be liable for Griffin's PIP benefits claim because of Griffin's alleged lack of diligence in trying to identify Harleysville before the one-year limitations period elapsed. We conclude that summary disposition was granted in error.

Griffin acted diligently under the circumstances. The crash report contained contact information for the truck driver but omitted insurance and identifying information for the truck at issue. Griffin hired an attorney to assist him who promptly sent a letter of intent to the truck driver, but the truck driver neither responded to the letter nor forwarded it.[8]

---

insurer within the order of priority who has received a timely PIP benefits claim but neither pays nor denies the claim prior to expiration of the limitations period risks being held liable due to its lack of timely action. Conversely, an insured or claimant who waits until the twilight of the limitations period to put an insurer on notice of a possible PIP benefits claim for the first time by filing a lawsuit is unlikely to have been diligent. Diligent and timely action by all parties is required; gamesmanship should not be rewarded.

[8] Justice ZAHRA suggests that Griffin could have been more diligent in tracking down the employer of the truck driver given that there was some evidence that the truck was carrying industrial equipment and might have had commercial logos on the vehicle. But Griffin was seriously injured, required emergency medical transportation, and was hospitalized for an extended time. Ultimately, the police report here was deficient because it lacked identifying information about the truck, and that deficiency is a large reason for the quandary that Griffin faced. What if Griffin, or someone involved in a similar accident, was unconscious? The dissent seems to suggest that seriously injured individuals in such circumstances would not be able to receive PIP benefits from any insurer unless someone else discovered the owner or registrant of the offending vehicle because the highest-priority insurer would theoretically be identifiable regardless of whether anyone is successful in actually identifying the insurer.

14

Griffin's attorney then submitted a claim for PIP benefits to Trumbull, who was Griffin's general PIP provider. Trumbull initially responded by saying that further investigation was needed, but Trumbull *did not make payment or deny Griffin's claim*, and it did not timely respond to inquiries from Griffin's attorney. The record demonstrates that Trumbull's prelitigation attempts to contact the truck driver were unsuccessful. Trumbull was also unable to locate a higher-priority insurer. In December 2016, a full four months before the expiration of the one-year limitations period, Trumbull closed the investigation. But Trumbull did not formally deny Griffin's claim until after this lawsuit had been filed and after the limitations period to put an additional insurer on notice or to file a lawsuit against another insurer had passed.

Beyond knowing that Trumbull was investigating the claim generally, it is not clear if Trumbull shared any details of its investigation with Griffin prior to litigation. What is clear is that Griffin was left waiting in limbo for Trumbull to make a decision on his pending PIP benefits claim. During this time, Griffin also submitted notices and claims to the MACP, Esurance, and Allstate as lower-priority insurers. The MAIPF refused to assign Griffin's claim to a carrier because Trumbull was a known insurer within the order of priority and was not explicitly disputing liability. About 11 months after the accident, Griffin hired a third-party company to try to identify the truck driver's insurance provider, but the company was unsuccessful. With Trumbull *refusing to pay or deny the pending claim* for PIP benefits, and being unable to identify any higher-priority insurer, Griffin filed this lawsuit slightly less than 12 months after the accident. It was only through deposition testimony in this case that the parties learned that the truck was a work vehicle insured by

15

Harleysville, which was not notified of the accident by either the driver or the insured business.

The Court of Appeals has previously held that "when an insurer that would be liable under one of the exceptions in MCL 500.3114(1) cannot be identified, the general rule applies and the injured party must look to her own insurer for personal protection insurance benefits." *Frierson*, 261 Mich App at 738, citing *Parks*, 426 Mich at 202-203. *Frierson* involved a hit-and-run in which the police were unable to locate the offending driver or vehicle, and thus *the parties agreed* that no higher-priority insurer was identifiable. We do not know what efforts the parties might have made to track down the fleeing driver, such as checking traffic cameras or asking for cooperation from law enforcement. Because of the parties' stipulation and the court's acceptance of that agreement, *Frierson* provides no clear guidance about what it means for a higher-priority insurer to be unidentifiable. Nevertheless, the facts and circumstances of a situation must be considered because the law cannot be reasonably applied in a manner that requires someone to do what is impossible. We thus disagree with the Court of Appeals majority and Justice ZAHRA that *Frierson* created a binary inquiry that only asks whether an insurer was potentially identifiable in the abstract. However, we agree with *Frierson*'s implication that when it would be practically impossible for a party to learn the identity of the presumed highest-priority insurer, then an injured party should be able to look to another insurer in the order of priority, such as their default PIP insurer or, if that is not an option, the MACP.[9]

---

[9] Indeed, it would be absurd for our state's comprehensive no-fault insurance system to leave an injured motorcyclist in a better position, from an insurance perspective, when the offending vehicle and driver flee the scene and are never identified than when the driver of

16

While this case does not involve a hit-and-run, many of the factual circumstances are similar. No insurance or identifying information for the truck was included in the crash report, and the truck driver refused to cooperate until served with a subpoena. Griffin thus had little more information relevant to claiming PIP benefits after the accident than someone who had been involved in a hit-and-run. Before filing a lawsuit, Griffin had no legal authority to compel cooperation from the truck driver, and there was nothing in the text of the no-fault act in 2016 that required a claimant to file a lawsuit or send out subpoenas before a pending PIP benefits claim had been denied. Importantly, MCL 500.3114(5) provides that a person "*shall claim* personal protection insurance benefits from insurers" in a specified order. (Emphasis added.) Claiming benefits from the highest-priority insurer that is identifiable through the filing of an insurance claim is not the same as filing an "action for recovery of" PIP benefits under MCL 500.3145(1). As previously explained, Griffin hired an attorney; investigated the claim; tried to "claim" PIP benefits from Trumbull, the highest-priority insurer known to and identifiable by any relevant party based on available information; and cooperated with Trumbull's investigation. Griffin further provided notice of his potential PIP benefits claim to every lower-priority insurer he could identify as well as to the MACP and the MAIPF. Under these facts, Griffin exercised due diligence, and Harleysville was unidentifiable during the prelitigation phase of this dispute, making Trumbull the default insurer under *Parks*, 426 Mich at 202-203, and *Frierson*, 261 Mich App at 738.

---

the offending vehicle talks with the police but the police fail to record identifying information about the offending vehicle itself.

We reject Trumbull's and Justice CLEMENT's arguments that due diligence required Griffin to file a lawsuit to obtain the subpoena power *before Trumbull had taken any formal action to deny or dispute liability for Griffin's pending PIP benefits claim*. Accepting such an argument would incentivize insurers to engage in undesirable gamesmanship and would be antithetical to the core purposes of the no-fault act concerning the prompt resolution of claims and the avoidance of needless litigation. See *Parks*, 426 Mich at 207; *Shavers*, 402 Mich at 578-579. Such gamesmanship would also be contrary to MCL 500.3142(1) and (2), which provide that "benefits are payable as loss accrues" and that benefits would be "overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained."

It is true that MCL 500.3114(5) places a burden on the claimant to "claim personal protection insurance benefits from insurers in" the stated order of priority, and we agree with Justice CLEMENT that this burden implies the claimant's need to exercise due diligence. We also agree with Justice CLEMENT that "[i]t is obviously impossible for claimants to see the future, and if that is the only way a claimant could identify a higher-priority insurer within the limitations period," then MCL 500.3114(5) should not be read as requiring a claimant to do something that is impossible. But it is equally true that a claimant cannot feasibly do more than ascertain all identifiable insurers that are potentially in the order of priority using legal means and available information.

That is precisely what Griffin did in this case. As previously noted, Griffin promptly hired an attorney, tried to contact the truck driver, hired a third-party company to look for applicable insurance policies, put every identifiable insurer on notice, and cooperated with Trumbull's investigation. Griffin had no legal right or ability, at that time, to force the

18

cooperation of the truck driver who was identified in the crash report. Moreover, after Trumbull was unable to identify a higher-priority insurer, it apparently closed its investigation and went silent rather than putting its insured on notice that it was disputing priority, disputing liability to pay, or denying the claim. Under these circumstances, *there was no reason for Griffin to file a lawsuit against Trumbull sooner than he did*, which was, after all, still within the limitations period. In the absence of an express requirement in the no-fault act, someone who is injured in an accident should not be required to file a lawsuit against a known insurance company merely to ensure that he or she can force cooperation of potentially knowledgeable individuals through the power of subpoena.

When one cuts through the fog of legal posturing, it becomes clear that the basis for Trumbull's nearly year-long silence and inaction on Griffin's claim was a phantom priority dispute. Trumbull did not believe that it was the highest-priority insurer, but it was unable to point to a higher-priority insurer until after Griffin filed this lawsuit. Even if Trumbull's belief was reasonable, it had several lawful options for protecting its rights. For example, Trumbull could have simply denied Griffin's claim, in which case the MAIPF likely would have assigned Griffin's claim, or Trumbull could have expressly stated that it was not the highest-priority insurer. If Trumbull was concerned about MCL 500.3142(2) but did not want to deny the claim, it could have notified Griffin that "reasonable proof" had not been "supplied as to the entire claim" and requested additional information or instructed Griffin to take additional action to provide whatever missing information was needed. Trumbull also could have paid Griffin's claim and filed its own lawsuit to seek statutory recoupment or equitable subrogation from a higher-priority insurer. Under any of these scenarios, Griffin would have been put on notice that his default insurer, to which he had been paying

19

monthly premiums, was contesting its liability to pay PIP benefits, and Griffin could have responded accordingly. What Trumbull could not do was leave its insured in limbo for nearly a year under the guise of "investigation" *while refusing to pay or deny the pending PIP benefits claim* and then pull the rug out after a lawsuit was filed and the limitations period in MCL 500.3145(1) had run.

## V. CONCLUSION AND RELIEF

We hold that under the facts of this case, Trumbull can be held liable to pay Griffin's claim for PIP benefits under MCL 500.3114(5). Griffin exercised due diligence by doing everything the law required of him, and we refuse to reward Trumbull for its gamesmanship. We reverse the judgments of the Court of Appeals and the Wayne Circuit Court to the extent that summary disposition was granted in favor of Trumbull. We remand this case to the Wayne Circuit Court for further proceedings that are consistent with this opinion.

Elizabeth M. Welch
Bridget M. McCormack
Richard H. Bernstein
Megan K. Cavanagh

20

STATE OF MICHIGAN

SUPREME COURT

WILLIE GRIFFIN,

       Plaintiff-Appellant,

v                                      No. 162419

TRUMBULL INSURANCE COMPANY
and MICHIGAN ASSIGNED CLAIMS
PLAN,

       Defendants-Appellees,

and

ALLSTATE INSURANCE COMPANY,
ESURANCE PROPERTY & CASUALTY
INSURANCE COMPANY, and JOHN DOE
INSURANCE COMPANY,

       Defendants.

_____

ZAHRA, J. (*dissenting*).

I would affirm the decision of the Court of Appeals. A lower-priority insurer cannot be held liable for personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, when the highest-priority insurer is identifiable and not given timely notice under MCL 500.3145(1). This conclusion is required by the unambiguous text of the no-fault act. The majority, however, eschews the unambiguous text of the act in favor of a result that is consistent with the act's general purpose. But the general purpose of an act cannot defeat the clear and unambiguous language within the act that places limitations on the scope of that act. To do so begs the question and assumes the answer. Here, the

Legislature made clear that a motorcycle operator who is injured in an accident that involves a motor vehicle "*shall* claim personal protection insurance benefits from . . . [t]he insurer of the owner or registrant of the motor vehicle involved in the accident."[1]  Because plaintiff failed to timely claim PIP benefits from the insurer of the owner or registrant of the truck involved in his accident, I dissent.

MCL 500.3114(5) states that "a person who suffers accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle *shall* claim personal protection insurance benefits from insurers *in the following order of priority*[.]"[2]  The first in the list of priority is "[t]he insurer of the owner or registrant of the motor vehicle involved in the accident."[3]  The Legislature's use of the word "shall" indicates that the priority list is mandatory.[4]  And it is undisputed here that Harleysville Insurance Company is the highest-priority insurer under MCL 500.3114(5).  Trumbull Insurance Company is no more than second in priority.  Therefore, plaintiff was required to follow the order of priority and claim benefits from Harleysville.  Plaintiff failed to do so within the one-year statutory period.[5]  Plaintiff is therefore barred from collecting PIP benefits from Harleysville.  Nothing in the no-fault

---

[1] MCL 500.3114(5)(a) (emphasis added).

[2] Emphasis added.

[3] *Id*.

[4] See, e.g., *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014) (explaining that the Legislature's use of the word "shall" in the relevant statutes "indicates a mandatory and imperative directive").

[5] See MCL 500.3145(1).

2

act provides a basis to conclude that plaintiff is nevertheless entitled to recover based on notice it gave to Trumbull, the wrong insurer. The no-fault act does not provide exceptions for difficulties in discovering necessary facts or evidence that would either toll the statute of limitations or allow the plaintiff to sue an otherwise incorrect defendant.

Similarly, nothing in the broader statutory context suggests that the Legislature intended to place lower-priority insurers on the hook when a plaintiff fails to identify the highest-priority insurer within the limitations period. One might think that if the Legislature intended for a lower-priority insurer to pay even when a higher-priority insurer can be identified, the Legislature would have provided a recoupment mechanism whereby the lower-priority insurer could seek reimbursement from the higher-priority insurer. The no-fault act contains various recoupment devices for insurers, but none covers these circumstances.[6] The need for a recoupment mechanism would be readily apparent if lower-priority insurers were required to pay in these circumstances. For example, an insurer might sue a lower-priority insurer on the very last day of the limitations period, leaving that insurer no time in which to identify a higher-priority insurer before the limitations period expired. This provides support for the conclusion that the lower-priority insurer is not obligated to pay when there is a higher-priority insurer.

I have no dispute with the majority about the general purpose of the no-fault act, which is "designed to provide sure and speedy recovery of certain economic losses

---

[6] See *Bronner v Detroit*, 507 Mich 158, 173-175; 968 NW2d 310 (2021) (discussing the reimbursement mechanisms in the statute).

3

resulting from motor vehicle accidents."[7] I also agree that "the *preferred* method of resolution [of priority disputes] is for one of the insurers to pay the claim and sue the other in an action of equitable subrogation."[8] But it cannot be that the general purpose of an act trumps express language within the act. Limitations on recovery placed in the no-fault act are more a part of the no-fault act's purpose than the broad, general purpose of the act itself. I am aware of no legislation, state or federal, that pursues a general purpose at all costs. There are always legislative limitations that set boundaries on recovery—boundaries that must be honored by the courts.[9]

Ultimately, the issue in this case is not whether the purposes of the no-fault act would be furthered by making Trumbull pay. Rather, at issue is whether an insurer must pay PIP benefits when it is not the highest-priority insurer. Was it plaintiff's obligation to determine whether the truck involved in his accident was insured, or was plaintiff permitted to make his claim for PIP benefits with Trumbull, his motor vehicle insurer, and thus place the onus on Trumbull to pay the claim even if a higher-priority insurer could be identified? As discussed earlier, I conclude that the obligation fell on plaintiff, not Trumbull. The no-fault act sets forth a clear order of priority. The act further requires the "person who suffers accidental bodily injury [to] . . . claim personal protection insurance benefits from insurers

---

[7] *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 517; 968 NW2d 482 (2021) (quotation marks and citation omitted).

[8] *Id*. (emphasis added; quotation marks, citation, and brackets omitted).

[9] As more fully explained in this dissent, the general purpose of ensuring prompt payment of no-fault benefits would have been satisfied had plaintiff's counsel more diligently pursued an investigation into this claim.

4

in the [statutorily defined] order of priority[.]"[10] Nothing in the statutory language suggests that a claim may be asserted against a lower-priority insurer, thus forcing that insurer to pay benefits even if a higher-priority insurer can be identified.

The Court of Appeals opinion in *Frierson v West American Ins Co* demonstrates how the statute operates.[11] There, the Court held that when an insurer cannot be identified, the injured party must look to their own insurer for PIP benefits. *Frierson* did not hold that an injured party can jump down the order of priority if the highest-priority insurer *could* have been identified but was not. As the majority explains, *Frierson* involved a hit-and-run in which neither the police nor the parties were able to identify the driver or offending vehicle. Because it was impossible to identify a higher-priority insurer, the injured party's own insurer was the highest-priority insurer under the no-fault act. But the *Frierson* panel explained that the offending vehicle's insurer would be liable under MCL 500.3114(5) "if identified."[12]

In the present case, the highest-priority insurer was identifiable and, in fact, has been identified. There is no dispute that Harleysville is a higher-priority insurer than Trumbull. The Court of Appeals correctly explained that *Frierson* calls for a binary analysis: a higher-priority insurer is either identifiable or not. Here, because the higher-priority insurer was identifiable, the statutory order of priority must be followed.[13]

---

[10] MCL 500.3114(5).

[11] *Frierson v West American Ins Co*, 261 Mich App 732, 738; 683 NW2d 695 (2004).

[12] *Id*.

[13] The majority relies, in part, on *Parks v Detroit Auto Inter-Ins Exch*, 426 Mich 191, 202-203; 393 NW2d 833 (1986). There, we addressed MCL 500.3114(1), which states, in pertinent part, "Except as provided in subsections (2), (3), and (5), . . . [a] personal injury

5

There is simply no textual basis for the "reasonable diligence" standard pressed by the majority and Justice CLEMENT. The majority emphasizes the unique facts and circumstances of this case, but the facts of this case are not all that unique and, in any event, do not change the meaning of a statute.[14] As discussed, MCL 500.3114(5) sets forth a mandatory order of priority. And there is not a statutory provision that creates an exception for claimants that failed to identify the proper insurer after giving it a good try. The majority and Justice CLEMENT import an exception into the statute based on policy and fairness concerns and, in doing so, rewrite the Legislature's priority scheme. As noted, under a proper reading of the statute, whether a higher-priority insurer is identifiable does not depend on whether a plaintiff exercised reasonable diligence to identify that insurer. But under the majority's opinion, a claimant may now provide notice to and recover from any of the listed insurers, regardless of how low on the priority list they may be; if he or she is deemed to have reasonably attempted to identify the higher-priority insurer, a lower-priority insurer will be forced to pay the claim and, in turn, bring its own claim for recovery against the highest-priority insurer.

---

insurance policy described in section 3103(2) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motorcycle accident." In concluding that Subsection (3) did not apply and thus Subsection (1) governed, we stated that "the general rule is that one looks to a person's own insurer for no-fault benefits unless one of the statutory exceptions, subsections 2, 3, and 5 applies." *Parks*, 426 Mich at 202-203. Here, by contrast, the terms of Subsection (5) clearly apply—MCL 500.3114(5) provides the rule for the circumstance at issue, i.e., a motorcycle accident.

[14] See *Clark v Martinez*, 543 US 371, 386; 125 S Ct 716; 160 L Ed 2d 734 (2005).

6

Even if there were a reasonable-diligence requirement, I would conclude, as does Justice CLEMENT, that plaintiff did not exercise reasonable diligence in this case. Plaintiff knew that a truck was involved in the accident giving rise to his injuries. Under the clear and unambiguous language of the no-fault act, plaintiff was to first pursue his PIP benefits from the insurer of the truck's owner or registrant. Plaintiff enlisted the aid of counsel to assert his claim. As noted in the majority's opinion, plaintiff's counsel sent a letter to the truck driver stating that plaintiff intended to take legal action and requesting that the driver forward the letter to his insurer. Apparently, the truck driver did not respond to this correspondence, and plaintiff's counsel did not take legal action, as threatened in the correspondence to the driver, or take any further action to determine the higher-priority insurer. Had plaintiff's counsel timely done so, plaintiff would have discovered the existence of Harleysville before the expiration of the limitations period. It does not appear, for example, that plaintiff or his counsel ever thought to investigate whether the driver had been operating his employer's vehicle at the time of the accident. The driver testified that the vehicle was a stake-bed truck with a tandem axle; there was also evidence that it was carrying a steamroller. Plaintiff indicated that he recalled seeing logos on the truck. It should have been apparent, therefore, that the truck could have been owned by the driver's employer. But plaintiff did not search for that employer, and it was not reasonable for plaintiff and his counsel to rely on Trumbull's own investigation.

It is not entirely clear what plaintiff or his attorney knew about Trumbull's investigation—they received a letter simply informing them that the claim was under investigation—yet they waited nearly five months before asking for an update from Trumbull. In May 2017, after the lawsuit had been filed, Trumbull responded that "[w]e

7

are unable to consider benefits at this time due to a lack of information regarding this matter." Thus, it does not appear that plaintiff was receiving updates or had any reason to believe that Trumbull had successfully found the higher-priority insurer—nor does it appear that plaintiff or his counsel sought any further updates. For these reasons, I cannot agree with the majority that plaintiff exercised reasonable diligence before commencing this lawsuit.

In sum, a goal of the no-fault act is indeed prompt payment, meaning that the act tends to prefer that insurers pay first and seek reimbursement later. But a general goal of the no-fault act cannot defeat clear statutory language. The majority's ruling improperly elevates this general principle from a mere policy objective to the prime directive of the no-fault act. For these reasons, I would affirm the decision of the Court of Appeals.

                                        Brian K. Zahra
                                        David F. Viviano

8

# STATE OF MICHIGAN

## SUPREME COURT

WILLIE GRIFFIN,

      Plaintiff-Appellant,

v

No. 162419

TRUMBULL INSURANCE COMPANY
and MICHIGAN ASSIGNED CLAIMS
PLAN,

      Defendants-Appellees,

and

ALLSTATE INSURANCE COMPANY,
ESURANCE PROPERTY & CASUALTY
INSURANCE COMPANY, and JOHN DOE
INSURANCE COMPANY,

      Defendants.

_____

CLEMENT, J. (*dissenting*).

I believe that the trial court properly identified the reasons for granting summary disposition to defendants-appellees in this matter. This means, on the one hand, that I dissent from the Court's decision to reverse the trial court. It also means that I decline to join Justice ZAHRA's dissent, because I am not persuaded by the Court of Appeals' rationale for granting summary disposition to defendant-appellee Trumbull Insurance Company, which he would adopt. Rather, I believe—as the trial court held—that plaintiff failed to exercise reasonable diligence in identifying the correct insurer to file a claim against, and I would affirm the Court of Appeals on that alternative basis.

It is well established that the goal of our no-fault system "was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich 554, 579; 267 NW2d 72 (1978). The intended comprehensiveness of the program is demonstrated by the existence of the assigned-claims system, which creates what is "essentially an insurer of last priority," *Cason v Auto Owners Ins Co*, 181 Mich App 600, 610; 450 NW2d 6 (1989), from which an injured person can recover benefits if no other applicable insurance is available, MCL 500.3172(1). On the other hand, the no-fault act textually imposes the burden of filing a proper claim on a claimant. Thus, "*a person* who suffers accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle *shall claim* personal protection insurance benefits from insurers in" a stated order of priority. MCL 500.3114(5) (emphasis added). "[T]he presumption is that 'shall' is mandatory." *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982). The law therefore does not contemplate a claimant simply filing a claim with *an* insurer that is *somewhere* in the order of priority, leaving it up to that insurer to ascertain whether a higher-priority insurer exists—the statutory text imposes the obligation on claimants to claim in the stated order of priority.

In light of this obligation to claim in the stated order of priority, the Court of Appeals concluded—and Justice ZAHRA agrees—that whether an insurer is liable "calls for a binary analysis that asks only whether a higher-priority insurer is identifiable." *Griffin v Trumbull Ins Co*, 334 Mich App 1, 11-12; 964 NW2d 63 (2020). If a higher-priority insurer is identified, at any point and for any reason, then a lower-priority insurer is necessarily relieved of liability under this rule. I do not agree that the analysis is this simple. As noted,

2

the structure of the no-fault system makes it clear that it is intended to be comprehensive. It is notable in this regard that all the instances of individuals who are excluded from benefits in MCL 500.3113 involve people who had control, in one way or another, over being excluded from benefits. When a claimant has demonstrated reasonable diligence in identifying the highest-priority insurer with which to file a claim, I do not believe that the insurer should then have a defense to paying benefits (at least, not after the limitations period of MCL 500.3145(1) has expired) because, by a stroke of chance, a higher-priority insurer is subsequently discovered.

The facts of *Frierson v West American Ins Co*, 261 Mich App 732; 683 NW2d 695 (2004), are illustrative of this principle. There, the plaintiff was a passenger on a motorcycle that had to swerve when an oncoming automobile crossed the center line of the road, causing the plaintiff to hit the ground. *Id*. at 733. Under MCL 500.3114(5)(a) and (b), the insurer of the owner of that automobile was the highest-priority insurer and the insurer of the operator of the automobile was the next highest, but because of the hit-and-run nature of the accident no information was known, or knowable, about those insurers, *id*. at 736-737, and the Court held that the priority analysis would proceed to insurers further down the list of priority, *id*. at 738. If, serendipitously, the owner of the automobile involved in the *Frierson* accident had come to light after the limitations period had expired—imagine if the automobile owner had business in the same courtroom in which *Frierson* was being litigated and remarked to one of the *Frierson* lawyers that he had been driving the automobile in that accident—I do not think the injured person could be denied benefits from the highest-priority insurer who *was* identified even while being time-barred from recovering benefits from the belatedly identified highest-priority insurer.

3

To this extent, then, I agree with the majority that the Court of Appeals' analysis was erroneous. The statute directs an injured person to "claim" in a stated order of priority, but by definition an injured person can give no more than their best effort at making such a claim. In light of the textual indications of the system's intended comprehensiveness, I would interpret the statute as requiring a claimant to show at least, but also no more than, reasonable diligence when it requires an injured person to "claim." It is obviously impossible for claimants to see the future, and if that is the only way a claimant could identify a higher-priority insurer within the limitations period, then I would not construe MCL 500.3114(5) as requiring a claimant to do something that is impossible in order to enjoy the benefits the system clearly contemplates should be made available.

On the other hand, I do not believe that the trial court clearly erred by concluding that plaintiff had not demonstrated reasonable diligence in trying to identify the insurer of the motor vehicle he swerved to avoid while riding a motorcycle. Plaintiff waited until roughly two weeks remained in the limitations period before filing suit against several potentially implicated insurers known to him (including Trumbull), the Michigan Assigned Claims Plan, and a fictitious "John Doe Insurance Company," a stand-in for the insurer ultimately identified as Harleysville. Plaintiff did so knowing that he was in an accident that involved a motor vehicle and thus that the insurer of that vehicle—if there was one— would be at the top of the order of priority. See MCL 500.3114(5)(a). He further knew the identity of the operator of the vehicle. He reached out via letter to the operator of the vehicle to get more information but received no answer. He knew that he could file suit against the unknown insurer of the accident vehicle under MCR 2.201(D) to subpoena the known operator of the vehicle and try to use legal process to compel the operator to disclose

4

the information plaintiff knew he might need to file a claim with the highest-priority insurer. Subpoenaing the driver, after all, is exactly how Trumbull discovered the name of the higher-priority insurer that has prompted this appeal. Not taking these steps, in my view, exposed plaintiff to the risk of a higher-priority insurer being discovered after the limitations period had expired with plaintiff lacking an adequate excuse for not discovering that insurer within the limitations period.

Of course, we have no way of knowing whether the operator would have cooperated with plaintiff. It is possible that the operator would not have disclosed the information in a timely manner, and therefore plaintiff would have been left with no recourse but to sue a lower-priority insurer anyway. In light of the no-fault system's intended comprehensiveness, plaintiff's reasonable efforts to identify a higher-priority insurer should shield him from summary disposition if such an insurer is discovered after the limitations period expires when we construe whether he has made a proper "claim" under MCL 500.3114(5). But I do not believe that it is reasonable to conclude that two weeks was enough time to realistically expect to use legal process to obtain the necessary information from the operator of the vehicle that caused plaintiff to swerve and crash, and as a result I do not believe that the trial court clearly erred by holding that plaintiff had not demonstrated reasonable diligence in pursuing his claim.

The majority, in coming to the opposite conclusion, focuses on Trumbull's conduct during the run-up to plaintiff's filing suit. But Trumbull's conduct is irrelevant; as noted, the burden was on *plaintiff* to file a proper claim under MCL 500.3114(5). As a result, whether "the basis for Trumbull's nearly year-long silence and inaction on Griffin's claim was a phantom priority dispute" is immaterial—to place the onus on Trumbull "to point to

5

a higher-priority insurer" is to invert the burden that the text of MCL 500.3114(5) places on the claimant and instead impose it on the insurer to identify higher-priority insurers if it wants to "protect[] its rights." An insurer is undoubtedly going to act in its own interest, and at times that interest will be aligned with the interest of its insured—for example, before the limitations period expires, the insurer's desire to avoid liability for benefits is aligned with the insured's desire to identify higher-priority insurers so as to make a proper claim. But no statute gives an insured a right to rely on that temporary alignment of interests; in the end, it is the insured who must claim against the proper insurer, which is likely why the majority cites no authority for its assertion that "an insurer that is confident that it is not liable to pay PIP benefits . . . should promptly deny the claim so that the claimant can . . . take other actions that might be necessary to preserve the right to PIP benefits." Absent some form of relief like estoppel—which neither plaintiff nor the majority argues is applicable here—the conduct of the insurer simply is not a relevant consideration in determining whether the plaintiff has made a claim with the proper insurer under MCL 500.3114(5).

The majority asserts that "[w]hat Trumbull could not do was leave its insured in limbo for nearly a year under the guise of 'investigation,' " but the majority identifies no legal authority that Trumbull violated. Given that Trumbull's arguments are characterized as a "fog of legal posturing" and its handling of its investigation as "pull[ing] the rug out after a lawsuit was filed and the limitations period . . . had run," I take it that Trumbull's conduct offends the majority's moral sensibilities. Statutes like MCL 500.3142(1) to (3) and MCL 500.3148(1) certainly provide, as the majority states, "strong incentives for prompt resolution of claims and avoidance of needless litigation," but they are no more

6

than that—incentives. They do not "establish that the insurers . . . must act diligently when investigating, responding to, and resolving [PIP benefits] claim[s]"—or, at least, they owe no such *duty to their insureds*. They certainly do not relieve the insured of the obligation to identify the correct insurer and make a claim with that insurer.

For my part, in looking at a system whose structure communicates a legislative policy of comprehensively available benefits but which places the onus on claimants to identify the correct insurer with which to make claims, I believe that the trial court identified the correct rule: claimants must demonstrate reasonable diligence in identifying the highest-priority insurer. I do not believe that the trial court clearly erred by concluding that plaintiff had not demonstrated such diligence, so I would affirm the Court of Appeals on that basis. I dissent from the Court's decision to reverse.

Elizabeth T. Clement